**In re Joann SAINZ–DEAN, Debtor.**

**Bankruptcy No. 91–12972 DEC.**

United States Bankruptcy Court, D. Colorado.

March 4, 1992.

James Kaplan, Machol, David & Michael, Denver, Colo., for debtor.

Audris Hampton, Robert Reed and Karen Castle, Burke & Castle, P.C., Denver, Colo., for Union Planters Nat. Bank.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

DONALD E. CORDOVA, Bankruptcy Judge.

THIS MATTER came on for hearing on the Debtor's Motion to Confirm her Second Amended Plan filed on September 11, 1991. A creditor, Union Planters National Bank ("Union"), filed an Objection to Confirmation and a Motion for Relief from Stay and For Adequate Protection. The Court has heard the evidence and legal argument, and has read the briefs submitted by the parties and hereby makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

1. The Debtor filed a Chapter 13 bankruptcy petition with a proposed plan on March 8, 1991, and later filed an Amended Plan and a Second Amended Plan which is the subject of the dispute in this action.

2. The Debtor proposes to bifurcate the claim of Union into secured and unsecured portions. Union made a loan to the Debtor of $88,904.00 on August 21, 1987 which is secured by a Deed of Trust upon the Debtor's principal residence ("residence"). The parties have stipulated that the residence has a fair market value of approximately $50,000.00.

3. The proposed bifurcation would leave Union secured to the extent of the fair market value of the residence and treat Union as an unsecured creditor for the remaining debt balance of approximately $37,426.00. The Debtor's Amended Plan provides that she will make monthly payments at the same principal and interest rate provided for in the Promissory Note until the secured portion is paid. The unsecured portion is treated as a Class IV claim and Union will be paid $3,143.00 which is 8.4% of that claim.

4. As of November 1, 1990, the Debtor was in arrears on her payments to Union, but she cured the arrearages and as of March 1, 1991, was current.

5. The Debtor seeks this Court's approval of her Second Amended Plan and bifurcation of Union's claim. Debtor relies on the holding in *In re Hart*, 923 F.2d 1410 (10th Cir.1991) as support for her position. The Tenth Circuit held that Debtors in Chapter 13 bankruptcies could utilize the provisions of 11 U.S.C. § 506(a) to bifurcate claims secured only by the Debtor's residence into secured and unsecured portions, and that only the secured portion was entitled to protection under 11 U.S.C. § 1322(b)(2).

6. Union asks this Court to distinguish the holding in *In re Hart*, 923 F.2d 1410 (10th Cir.1991) based on the fact that the Debtor's loan is insured by the Federal Housing Association ("FHA") and should, therefore, receive different treatment. Union states that when mortgagor defaults on a federally insured loan, the lender is reimbursed only for the amount of the secured portion, rather than for the total amount of the indebtedness. Union argues that it is contrary to public policy to allow bifurcation of federally insured loans.

## MERITS

Subsequent to the time this case was argued and submitted to the Court, the United States Supreme Court decided the case of *Dewsnup v. Timm,* —— U.S. ——, 112 S.Ct. 773, 116 L.Ed.2d 903 (1991). In that case, the Supreme Court denied a Chapter 7 Debtor the right to "strip down" a ·creditor's lien on real property to the value of the collateral when that value is less than the amount of the claim secured by the lien. The Supreme Court affirmed the Tenth Circuit Court of Appeals which refused to allow the Debtor to use § 506(d)[1] to redeem real property by paying the secured creditor the current fair market value of the property. *See, In re Dewsnup,* 908 F.2d 588 (10th Cir.1990).

In the *Dewsnup* case, the Chapter 7 Debtor filed an adversary proceeding for the purpose of reducing the creditor's lien on land using the provisions of 11 U.S.C. § 506(a) and (d). § 506(d) provides that a lien is void to the extent that it secures a claim against the Debtor that is not an allowed secured claim. The Debtor owed approximately $120,000.00 on the Note but the fair market value of the land securing the debt had a judicially determined value of only $39,000.00. The Debtor sought to "strip down" the lien using § 506(a) and (d). The Supreme Court held that "§ 506(d) does not allow the petitioner to strip down respondent's lien, because respondent's claim is secured by· a lien and has been fully allowed pursuant to § 502." *Id.* —— U.S. at ——, 112 S.Ct. at 778. Therefore, the claim could not be classified as "not an allowed secured claim for purposes of the lien voiding provisions of § 506(d)." The Supreme Court recognized the many ambiguities in the relationship between § 506(a)[2] and other provisions in the Bankruptcy Code and limited its holding to the facts of the case.

The secured creditor and the United States in the *Dewsnup* case both argued that the words "allowed secured claim" in § 506(d) should be read "term by term" to refer to any claim that is, first, allowed, and, second, secured. They maintained that 506(d) should have the simple and sensible function of voiding a lien whenever a claim secured by the lien itself had not been allowed. This approach would insure that the Code's determination not to allow the underlying claim against the Debtor personally was given full effect by preventing its assertion against the Debtor's property. The Supreme Court adopted their position and stated that "the fresh start policy cannot justify an impairment of respondent's property rights, for the fresh start does not extend to an *in rem* claim against property, but is limited to a discharge of personal liability." *Id.* at ——, 112 S.Ct. at 777.

The Supreme Court recognized that historically "a lien on real property passed through bankruptcy unaffected." *Id.* —— U.S. at ——, 112 S.Ct. at 778. *See also, Farrey v. Sanderfoot,* 500 U.S. ——, 111 S.Ct. 1825, 114 L.Ed.2d 337 (1991). The Court stated that it was unaware of any pre–Code provision, other than in reorganization proceedings, which permitted involuntary reduction of the amount of a creditor's lien for any reason other than payment on the debt. The Court noted the absence of any legislative history expressing any intent to "grant a debtor the broad new remedy against allowed claims to the

1.     (d) to the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void unless—
       (i) such claim was disallowed only under §§ 502(b)(5) or 502(e) of this title;  or
       (ii) such claim *is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under § 501 of this title.*

2.     *11 U.S.C. § 506(a)* provides as follows:
       (a) an allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to set off under § 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to set off, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to set off is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.....

extent that they become 'unsecured' for purposes of § 506(a) without the new remedy's being mentioned somewhere in the Code itself or in the annals of Congress." *Id.* at ——, 112 S.Ct. at 779. Since neither Congress nor the Code provided for the "strip down," the Court labeled the approach "not plausible" and "contrary to basic bankruptcy principles." *Id.* at ——, 112 S.Ct. at 779.

The issue addressed by the Tenth Circuit in the *Hart* case was "whether a home mortgage protected by 11 U.S.C. § 1322(b)(2) can be bifurcated into secured and unsecured portions based on the fair market value of the property under a threshold application of the provisions of 11 U.S.C. § 506(a) to an undersecured mortgage." *Id.* at 1411. § 1322(b)(2) provides as follows:

> (b) subject to subsections (a) and (c) of this section, the plan may—

> (2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims;

In the *Hart* case, the outstanding mortgage balance was $55,000.00, and the fair market value of the residence securing the mortgage was stipulated to be $30,000.00. The Hart's proposed to bifurcate the claim into $30,000.00 secured and $25,000.00 unsecured, thus stripping down the secured creditor's lien. The bankruptcy court allowed bifurcation because it found that the mortgage was secured by more than the Debtor's principal residence and, was therefore removed from the protection of § 1322(b)(2). The district court reversed the bankruptcy court, holding that the modification of the mortgage was inappropriate given the protection provided for residential mortgages under 11 U.S.C. § 1322(b)(2). The district court found the mortgage to be secured only by the Debtor's principal residence.

The Tenth Circuit reversed the district court and held that "the bifurcation was a recognition of the legal status of the creditor's interest in the debtor's property, and not a modification of the mortgage." *Id.* at 1411. Bifurcation was accomplished "by applying the general principles of § 506(a) to the mortgage and then protecting only the secured claim by the provisions of § 1322(b)(2)." *Id.* at 1413. In permitting bifurcation, the Court followed the Third and Ninth Circuits in holding "that an undersecured mortgage is, for the purposes of the Bankruptcy Code, two claims, and only the secured claim is protected by § 1322(b)(2)." *Id.* at 1415. *See, Hougland v. Lomas & Nettleton Company (In re Hougland),* 886 F.2d 1182 (9th Cir.1989); and *Accord Wilson v. Commonwealth Mortgage Corp.,* 895 F.2d 123 (3rd Cir. 1990). The Court did not limit its holding to those situations where the mortgage was secured by more than the Debtor's principal residence, but also applied it to those fact situations where it was secured only by the Debtor's principal residence.

The Tenth Circuit approved the confirmation of the Hart's Chapter 13 Plan reasoning that since it provided for payment in full of the "secured claim," it did not modify the secured creditor's rights as prohibited by 11 U.S.C. § 1322(b)(2). Their holding permitted the Debtor to "strip down" the amount of the creditor's lien. It is noted here that the mortgage in the *Hart* case was federally insured and although the issue was not raised nor decided in *Hart,* it is not a persuasive argument. Public policy arguments have been uniformly rejected. Judge Brorby wrote a dissent claiming that the analysis employed by the majority rendered § 1322(b)(2) essentially meaningless. He also noted that the Fifth, Eighth and Eleventh Circuits disagreed with the majorities' approach.

To allow the proposed bifurcation and resulting reduction of the secured creditor's claim in this case seems inconsistent with the Supreme Court's holding that liens should pass through bankruptcy unaffected unless paid for. The act of bifurcation in this case allowing two claims—a secured and an unsecured—results in the involuntarily reduction of the amount of the creditor's mortgage without paying him for it. The Court believes this result is inconsistent with the *Dewsnup* analysis but in accordance with the *Hart* holding.

This Court believes the *Hart* holding would probably not be followed by the Tenth Circuit in light of the *Dewsnup* decision. However, this Court is compelled to follow the mandate of the *Hart* decision absent a Supreme Court or Tenth Circuit decision to the contrary. *See, Litman v. Massachusetts Mutual Life Insurance Company,* 825 F.2d 1506 (11th Cir.1987). Although the *Dewsnup* decision casts doubt on the *Hart* analysis, it does not specifically overrule the holding, and therefore, this Court feels bound by it and will hold accordingly.

IT IS, THEREFORE, ORDERED, based upon the reasons stated above that the Debtor's Motion to Confirm the Second Amended Chapter 13 Plan is hereby GRANTED. The Plan does comply with the requirements of 11 U.S.C. § 1322(b)(2).

IT IS FURTHER ORDERED that the creditor's Motion For Relief From Stay is hereby DENIED.